UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

MICHAEL V. SLANGA, on behalf of
himself and others similarly situated,

     Plaintiff,

v.                       CASE NO. 8:17-cv-01220-MSS-TGW

LDRV HOLDINGS CORP. d/b/a
LAZY DAYS,

     Defendant.

_____/

## DEFENDANT'S MOTION FOR SUMMARY JUDGMENT

Defendant LDRV Holding Corp. d/b/a Lazy Days ("Lazy Days"), by and through its undersigned counsel and pursuant to Fed.R.Civ.P. 56, hereby moves for summary judgment. The grounds upon which the instant motion is based is set forth in the following Supporting Memorandum of Law.

## SUPPORTING MEMORANDUM OF LAW

### I.

### UNDISPUTED MATERIAL FACTS

Plaintiff Michael V. Slanga ("Slanga") was employed by Lazy Days as a Service Advisor from July 2016 through March 31, 2017. [Complaint, ¶ 4].

The business of Lazy Days is retail sales and service of recreational vehicles ("RVs"). [Slanga: 29]. Lazy Days does not manufacture any RVs. [Slanga: 30].

Lazy Days maintains inventory of RVs on its lot for sale. [Slanga: 30]. Lazy Days has a license from the State of Florida to operate a motor vehicle dealership. [Slanga: 30]. Like a car dealership, Lazy Days has a tag and title office. [Slanga: 31].

More than fifty percent of Slanga's time, while working for Lazy Days, was spent in activities related to servicing customers' RVs. [Jensen, ¶4]. Slanga coordinated with technicians on estimates of cost and time for servicing. [Slanga: 41]. Slanga communicated and coordinated with service technicians on the status of parts. [Slanga: 41]. Slanga coordinated with technicians on how much time it would take for a repair to be completed. [Slanga: 41]. It was his responsibility to communicate with customers about the progress of their repair services. [Slanga: 42]. He was expected to ensure that the service work had been completed consistent with the work order. [Slanga: 42].

If parts were not available and the work had to be rescheduled, it was Slanga's responsibility to discuss service options with the customer. [Slanga: 42]. Service advisors are expected to ensure that the customer's RV was ready for pickup, including making sure that batteries were charged and the RV was clean, orderly and presentable. [Slanga: 43].

Slanga was responsible for determining and coordinating with the various repair shops within Lazy Days for service. [Slanga: 36-37]. There were also outside companies used by Lazy Days on site for detailing and upholstery services. [Slanga: 40]. In addition, for engine or transmission work, the vehicles would have

to be referred to a Ford dealership or a Freightliner dealership. [Slanga: 40]. Service Advisors coordinated the repair services performed by those outside the companies. [Slanga: 41].

Slanga used his skills and ability to upsell services at Lazy Days. [Slanga: 15]. Service Advisors were expected to look for opportunities to sell service specials to customers. [Slanga: 39]. If a technician suggested a repair, the Service Advisor would attempt to sell it to the customer. [Slanga: 39]. Service Advisors were expected to upsell maintenance and repair services. [Slanga: 30]. Service Advisors were expected to look for opportunities to sell general maintenance packages. [Slanga: 39]. As a Service Advisor, Slanga was provided reports showing the revenue he had generated selling services. [Slanga: 40].

Lazy Days paid Slanga an annual salary of $42,500. [Slanga: 27]. In addition, he was paid a weekly commission of 1.5% of his invoiced parts and labor sales. [Slanga: 27].

Slanga reported to Ted Schwartz ("Schwartz"), who reported to Steve Jensen ("Jensen"). [Slanga: 33]. Slanga got along well with Schwartz and Jensen. [Slanga: 33].

In Slanga's position, customer service and customer satisfaction were important. [Slanga: 31]. There were discussions at twice weekly Service Advisor meetings about the importance of consistent follow-up with customers and accurate communications. [Slanga: 87].

*TPA 512398727v1*

After Slanga was hired, customers began to complain that he was not responsive and would not get back to them or, if he was responsive, that his demeanor toward them was rude, short, or condescending. [Jensen, ¶ 10]. Slanga admits that he was not in a position to dispute the fact that customers complained that he did not return their calls. [Slanga: 84]. A number of Slanga's customers requested that they be assigned to a different Service Advisor. [Jensen, ¶¶ 10, 21].

On March 31, 2016, after receiving similar complaints from two additional customers, Jensen decided to terminate Slanga's employment. [Jensen, ¶ 23]. Jensen informed Schwartz of his decision and Schwartz agreed with it. [*Id.*]. During the termination meeting, Jensen attempted to go over the situation involving the final customer complaint, but Jensen and Slanga disagreed over the specifics of when the customer was to be contacted by Slanga. [Slanga: 107].

Slanga cannot identify any other Service Advisor who received as many customer complaints as he did during the time that he worked for Lazy Days. [Slanga: 121]. Slanga also cannot identify any Service Advisor who was the subject of as many customer requests that another Service Advisor handle the customer's RV as he was. [Slanga: 121-22].

Slanga believes that he had two discussions with Ted Schwartz at the beginning of his employment about his work hours. [Slanga: 51-2]. Slanga asked Schwartz about having to work Monday through Saturday without receiving a corresponding day off in the week. [Slanga: 51]. Later, about a month before he was terminated, Slanga asked Schwartz about a raise. [Slanga: 111].

Slanga does not recall ever having any discussion with Jensen about overtime pay. [Slanga: 55]. In addition, Slanga did not have any discussion with anyone at HR about overtime pay. [Slanga: 55].

When asked why he believes that he was terminated, Slanga stated: "There's multiple reasons. One thing that I brought up was that it was prior to all of this in the same month Ted and I were talking about wage compensation and giving me a raise. I do believe that could have had an effect on certain terms." [Slanga: 110]. Slanga also believes that he could have been used as a "scapegoat" for the new customer communication policies that LazyDays was putting in place. [Slanga: 112-13]. Asked whether there are any other reasons why he believes that he was terminated, Slanga testified: "There could be. I'm just kind of drawing a blank right now." [Slanga: 115]. Slanga was unable to explain why he testified in his unemployment compensation hearing on June 6, 2017 that he believed that he was terminated because of a miscommunication between a customer and Jensen, and for no other reason. [Slanga: 116-17].

## II.

## ARGUMENT

### A. Summary Judgment Standard

"Rule 56(c) mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex Corp. v. Catrett,* 477 U.S.

317, 322, 106 S. Ct. 2548, 91 L. Ed. 2d 265 (1986). The purpose of summary judgment is ". . . to see whether there is a genuine need for trial." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.,* 475 U.S. 574, 587, 106 S. Ct. 1348, 89 L. Ed. 2d 538 (1986). One of the primary purposes of summary judgment is to isolate and dispose of factually unsupported claims and defenses. *Celotex Corp. v. Catrett,* 477 U.S. at 323-24. Summary judgment is "properly regarded not as a disfavored procedural short cut, but rather as an integral part of the federal rules as a whole." *Celotex,* 477 U.S. at 327.

Under Rule 56, Lazy Days must either show that Slanga has no evidence to support his case or present "affirmative evidence demonstrating that Slanga will be unable to prove his case at trial." *United States v. Four Parcels of Real Property,* 941 F.2d 1428, 1437-38 (11th Cir. 1991) (*en banc*).

While inferences from the evidence must be drawn in favor of Slanga, he "may not rest upon mere allegations or denials," but "must set forth specific facts showing that there is a genuine issue for trial." *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 252, 106 S. Ct. 2505, 91 L. Ed. 202 (1986). The mere existence of some factual dispute will not defeat summary judgment unless that factual dispute is *material* to an issue affecting the outcome of the case. *Chapman v. A1 Transport,* 229 F.3d 1012, 1023 (11th Cir. 2000).

**B.**    **Slanga's FLSA Overtime Claim**

Slanga alleges in Count I that 29 U.S.C. § 207(a)(1) of the FLSA entitled him to receive overtime compensation for work he performed over forty hours a week.

6

[Complaint, ¶ 23].  Section 207(a)(1) states, relevant part:

> Except as otherwise provided in this section, no employer shall employ any of his employees … for a workweek longer than forty hours unless such employee receive compensation for his employment in excess of the hours above specified at a rate not less than one and one-half times the regular rate at which he is employed.

29 U.S.C. § 207(a)(1).

In addition to establishing overtime compensation requirements, the FLSA creates exemptions from those requirements.  The determination of whether an employee falls within the scope of an FLSA exemption is ultimately a legal issue. *Icicle Seafoods, Inc. v. Worthington,* 475 U.S. 709, 713-14 (1986); *Paneto v. Motor Car Concepts II, Inc.,* 2007 WL 328730, at *2 (M.D. Fla. Jan. 31, 2007) ("[t]he determination of whether an FLSA exemption applies is ultimately a legal question, and can be determined on summary judgment").

One exemption, found in Section 213(b)(10)(A), states that "[t]he provisions of section 207 … shall not apply to … any salesman, partsman, or mechanic primarily engaged in selling or servicing automobiles, trucks or farm implements, if he is employed by a non-manufacturing establishment primarily engaged in the business of selling such vehicles or implements to ultimate purchasers."  29 U.S.C. § 213(b)(10)(A).  Where the requirements of Section 213(b)(10)(A) are met, employees falling within the scope of the exemption have no statutory entitlement to time and one-half pay for hours worked in excess of forty in a work week.

The law of this Circuit is that individuals employed in the position of "service advisor" fall within the exemption created by 29 U.S.C. § 213(b)(10)(A).  In *Brennan*

*v. Deel Motors, Inc.,* 475 F.2d 1095 (5th Cir. 1973), the former Fifth Circuit Court of Appeals ruled that service advisors are exempt under 29 U.S.C. § 213(b)(10) because they worked "as an integrated unit [with mechanics and partsmen] performing the services necessary for the maintenance of the customer's automobile." *Id.* at 1097. The Fifth Circuit observed:

> These service salesmen work directly with customers coordinating the sale of numerous goods, services, and mechanical skills provided by the appellees. The service salesmen diagnose each customer's problem with his automobile and then refer the car to an appropriate department within appellees' business operation for needed repairs or additional equipment desired.

*Id.* at 1096.

The Fifth Circuit reasoned that "a common sense interpretation and application of [Section 213(b)(10)(A)] mandates inclusion of service salesman within its scope." *Id.* at 1097. The Fifth Circuit concluded that the "best interpretation of this section calls for the inclusion of these service salesmen within the scope of this exemption:" *Id.* In *Bonner v. City of Prichard, Ala,* 661 F.2d 1206 (11th Cir. 1981) the Eleventh Circuit adopted all prior "decisions of the United States Court of Appeals for the Fifth Circuit . . . as that court existed on September 30, 1981 . . . as precedent in the Eleventh Circuit." Therefore, *Deel Motors* is controlling authority in the Eleventh Circuit. *Id.* at 1208.

Similarly, in *Walton v. Greenbrier Ford, Inc.,* 370 F.3d 446, 450-451 (4th Cir. 2004), the Fourth Circuit Court of Appeals was asked to determine whether plaintiff, employed as a "Service Advisor" by an automobile dealership, fell within the scope of the FLSA overtime exemption. The court observed "that Walton was an integral

8

part of the dealership's servicing of automobiles.  Based on these facts, the Fourth Circuit, citing *Deel Motors*, ruled:  "as a matter of law, that [Plaintiff's] position as a service writer/advisor is exempt from the FLSA premium overtime pay requirement." *Id.* at 450-51.[1]

In 1987, the Department of Labor ("DOL") revised its Field Operations Handbook, to provide:

> Employees variously described as service writers, service advisors, service managers or service salesmen whose primary duty is to record the condition of a vehicle and write up a report indicating the parts and mechanical work needed have ben construed as within the ["salesman, partsman and mechanic" exemption] by two appellate courts (Fifth and Sixth Circuits) and two district courts (in the Eighth and Tenth Circuits).  Consequently, [the DOL] will no longer deny the OT exemption for such employees.  The policy (that these employees are within the exemption) represents a change from the position in [the 1970 Regulations], which will be revised as soon as practicable.

More recently, the Supreme Court, in *Encino Motorcars, LLC v. Navarro,* ___ U.S. ___, 136 S. Ct. 2117 (2016), the Supreme Court ruled that *Chevron* deference would not be applied to the Department of Labor's regulation that service advisors could be exempt from overtime under 29 U.S.C. § 213(b)(10)(A).  On remand, the Ninth Circuit Court of Appeals ruled that service advisors did not fall within the exemption created by 29 U.S.C. § 213(b)(10)(A).  *Navarro v. Encino Motorcars, LLC,* 845 F.3d 925 (9th Cir. 2017).  On September 28, 2017, the Supreme Court granted

---

[1] *See also Yemey v. Cass County Motors,* 1977 WL 1678 (D. Neb. 1977) ("service writer" who performed a variety of functions connected with repair services, fell within exemption); *Brennan v. North Bros. Ford, Inc.,* 1975 WL 1074 (E.D. Mich. 1975) ("service salesman" or "service writers," who acted as link between repair service customers and dealership's mechanics, fell within the exemption); *Brennan v. Import Volkswagen, Inc.,* 1975 WL 1248 (D. Kan. 1975) ("service advisors," whose job duties included selling repairs and services to customers, fell within the exemption); *Thompson v. J.C. Billion, Inc.,* 295 P.3d 397 (Mont. 2013) (manager of automotive services and repair facility fell within exemption).

a petition for writ of certiorari in the case. *Encino Motor Cars, LLC v. Navarro,* 138 S. Ct. 54 (2017).

Notwithstanding the pendency of *Encino Motors* before the Supreme Court, *Deel Motors* controls this case. "Where controlling circuit precedent exists on an issue before a district court, a grant of certiorari on the same issue by the United States Supreme Court does not justify a stay because certiorari grants do not change the law." *Levesque v. Gov't Employees Ins. Co.,* 2015 WL 6155897, at *6 (S.D. Fla. Oct. 20, 2015); *Speer v. Whole Foods Market Group, Inc.,* 2015 WL 2061665 (M.D. Fla. Apr. 29, 2015) (denying motion to stay case pending the outcome of a Supreme Court ruling).

This case is on all fours with *Deel Motors.* In the first place, the RVs sold by Lazy Days are deemed automobiles or trucks under Florida and federal law. *See,* e.g. Section 681.102(15), *Florida Statutes;* Section 320.01(b), *Florida Statutes* ("'motor vehicle' means: … (b) a recreational vehicle type primarily designed as temporary living quarters for recreational, camping, or travel use, which either has its own motive power or is mounted on or drawn by another vehicle'"). *See Wirts v. Louisiana Trailer Sales, Inc.,* 294 F. Supp. 76 (E.D. La. 1968) (employees who serviced mobile homes fell within the exemption for mechanics primarily engaged in servicing trailers).

Moreover, Lazy Days does not manufacture RVs. Instead, it engages in the retail sale of RVs to end users. *See, e.g. Paneto v. Motor Car Concepts II, Inc., supra* (automobile dealership that did not manufacture vehicles was a "non-

10

manufacturing establishment" for purposes of Section 213(b)(10)(A)).

Further evidence that Lazy Days is a retailer, not a manufacturer, is that it is licensed under the laws of the State of Florida to operate as a motor vehicle dealership. Like a car dealership, Lazy Days offers tag and title services, which allows it to assist its in-state customers in obtaining vehicle titles. All of these facts demonstrate that Lazy Days is a non-manufacturing establishment within the meaning of Section 213(b)(10)(A).

In addition, Lazy Days is "primarily engaged" in the business of selling RVs to ultimate purchasers. The FLSA interpretive regulations indicate that to be "primarily engaged," Lazy Days must demonstrate that "over half of [its] annual dollar volume of sales made or business done must come from sales of the enumerated vehicles." 29 C.F.R. § 779.372(d). Here, it is undisputed that over fifty percent of Lazy Days' annual sales volume is generated from retail sales of recreational vehicles.

Finally, it is undisputed that Slanga was "primarily engaged" in selling or servicing RVs. That, fact is underscored by Lazy Days' payment of commissions to Slanga. The payment of commissions has been repeatedly held to be a significant factor in determining that an employee is subject to the overtime exemption in 29 U.S.C. § 213(b)(10). *Brennan v. Deel Motors,* 475 F.2d at 1097; *Walton v. Greenbrier Ford,* 370 F.3d at 450; *Dayton v. Coral Oldsmobile, Inc.,* 684 F. Supp. 290, 292 (S.D. Fla. 1988) (the fact that plaintiff was paid on a salary-plus-commission basis was "important in determining whether the job performed was exempt from the FLSA").

11

In short, under the controlling precedent of *Deel Motors,* service advisors like Slanga are exempt from the overtime provisions of the FLSA.  Therefore, summary judgment should be granted for Lazy Days on Slanga's FLSA overtime claim.

**C.     Lazy Days Is Entitled To Summary Judgment On Slanga's Claim For Liquidated Damages**

Count I of Slanga's Complaint seeks an award of liquidated damages in addition to unpaid overtime compensation.

An employer who violates the FLSA is liable for the unpaid wages and "an additional equal amount as liquidated damages."  29 U.S.C. § 216.  Section 260 of Title 29 qualifies this automatic award of liquidated damages, however:

> [I]f the employer shows the satisfaction of the court that the act or omission giving rise to such action was in good faith and that he had reasonable grounds for believe that his act or omission was not a violation of the [FLSA], the court may, in its sound discretion, award no liquidated damages or award any amount thereof not to exceed the amount specified in § 16 of this title.

29 U.S.C. § 260.

"The purpose of [§ 260] was to mitigate the harshness of the then-strict liability offense of violating Section 216, with its attendant double-damage assessment." *LeCompte v. Chrysler Credit Corp.,* 780 F.2d 1260, 1265 (5th Cir. 1986).  A reasonable belief may be found where the employer purposefully engaged in the acts proven to be violations [of the FLSA] but did so under a mistaken, although reasonable belief, that its acts were in conformity with the law."  *Martinez v. Food City, Inc.,* 655 F.2d 369, 376 (5th Cir. 1981).

12

Here, given the controlling precedent of *Brennan v. Deel, supra,* Lazy Days clearly has had a reasonable basis for believing that its compensation plan for Service Advisors did not violate the FLSA. Therefore, summary judgment should be granted for Lazy Days on Slanga's claim for liquidated damages. *See, e.g. Martin v. Penn Line Service, Inc.,* 416 F. Supp. 1387 (W.D. Pa. 1976) (plaintiffs were not entitled to recover liquidated damages on overtime claims where the employer had a good faith belief that the plaintiffs were exempt from the provisions of the FLSA relating to overtime).

D.    **Slanga's Retaliation Claim**

Section 215(1)(3) of the FLSA prohibits employers from "discharg[ing] or in any other manner discriminat[ing] against any employee because such employee has filed any complaint or instituted or caused to be instituted any proceeding under or related to this chapter, or has testified or is about to testify in any such proceeding, or has served or about to serve on an industry committee." 29 U.S.C. § 215(a)(3).

Where the plaintiff does not present any direct evidence of retaliatory discharge, as in this case, circumstantial evidence of FLSA retaliation may be evaluated under the burden shifting framework articulated in *McDonnell Douglas Corp. v. Green,* 411 U.S. 792, 802, 93 S. Ct. 1817. 36 L. Ed. 2d 668 (1973). *See Rapanti v. Four Amigos Travel, Inc.,* 266 Fed. Appx. 820, 822 (11th Cir. 2008).

Under this framework, in order to establish a *prima facie* case for retaliation under the FLSA, a plaintiff must prove that: 1) he engaged in protected activity; 2)

13

thereafter he suffered an adverse employment action; and 3) a causal connection between the protected activity and the adverse action. *Wolf v. Coca Cola Company,* 200 F.3d 1337, 1342-43 (11th Cir. 2000). In this case, Slanga cannot establish a *prima facie* case of FLSA retaliation because he cannot prove that he engaged in protected activity or that there is any causal connection between his alleged protected activity and his termination.

## 1.    No Protected Activity

"A plaintiff engages in statutorily 'protected activity' when he or she protests about an employer's conduct which is actually unlawful, so long as he or she demonstrates 'a good faith, reasonable belief that the employer was engaged in unlawful employment practices.'" *Harper v. Blockbuster Ent'm't Corp.,* 139 F.3d 1385, 1388 (11th Cir. 1998), *quoting Little v. United Technologies, Carrier Transicold Division,* 103 F.3d 956, 960 (11th Cir. 1997). "However, it is insufficient for a plaintiff 'to allege his belief in this regard was honest and *bona fide,* the allegations and record must also indicate that the belief, though perhaps mistaken, was objectively reasonable.'" *Id.*

The objective reasonableness of plaintiff's belief that the employer's conduct is unlawful is "measured against existing substantive law." *Clover v. Total Sys. Servs., Inc.,* 176 F.3d 1346, 1351 (11th Cir. 1999). Therefore, where an employer's conduct is lawful, an employee's belief that an employer engaged in an unlawful employment practice is *not* objectively reasonable and does not qualify as protected activity. *Harper v. Blockbuster Entertainment Corp., supra* at 1388.

14

In *Kasten v. Saint-Gobain Performance Plastics Corp.,* 563 U.S. 1, 131 S. Ct. 1325, 179 L.Ed. 2d 379 (2011), the Supreme Court was sensitive to the argument that an employer must have "fair notice that an employee is making a complaint that could subject the employer to a later claim of retaliation" and the concern that employers not "be left in a state of uncertainty as to whether an employee . . . is in fact making a complaint about an Act violation or just letting off steam." 131 S. Ct. at 1334. "[I]t is difficult to see how an employer who does not (or should not) know an employee has made a complaint could discriminate *because* of that complaint." *Id.* The Court concluded: "To fall within the scope of the anti-retaliation provision, a complaint must be sufficiently clear and detailed for a reasonable employer to understand it, in light of both the content and context, as an assertion of rights protected by the statute and a call for their protection." *Id.*

Accordingly, "not all amorphous expressions of discontent related to wages and hours constitute complaints filed within the meaning of § 215(a)(3)." *Lambert v. Ackerley,* 180 F.3d 997, 1007 (9th Cir. 1999). Federal courts have repeatedly ruled that generalized employee complaints about hours and pay do not constitute protected activity.

For example, in *Spiteri v. AT&T Holdings, Inc.,* 40 F. Supp. 3d 869 (E.D. Mich. 2014), Spiteri claimed that he engaged in protected activity when he refused to work additional hours at the end of a shift to make up time he was permitted to be off task during  the work day in order to stand or walk as an accommodation for his disabling back pain. The court ruled that Spiteri's belief that his employer had

15

violated the FLSA by requiring him to make up his accommodation break time was not objectively reasonable and, therefore, the employee's complaint about having to make up the time did not constitute protected activity.

Numerous other courts have reached similar conclusions. *See, e.g. Hagen v. Echo Star Satellite, LLC.,* 529 F.3d 617 (5th Cir. 2008) (employee did not engage in protected activity by asking a human resources manager a question about the legality of a planned schedule change); *Biggio v. H2O Hair, Inc.,* 2017 WL 2541017 (E.D. La. June 12, 2017) (request for a schedule change did not constitute protected activity under the FLSA); *Dunn v. Sederakis,* 143 F. Supp. 3d 102 (S.D.N.Y. 2015) (complaint about improper calculation of sick leave was not protected activity under the FLSA); *Benton v. Laborers' Joint Training Fund,* 121 F. Supp. 2d (D.D.C. 2015) (employee's inquiry as to what her rights to overtime wages were did not constitute protected activity); *Perez v. Brands Mart Service Corp.,* 2011 WL 3236022, at *9 (S.D. Fla. July 28, 2011) ("[d]emands for more compensation are not protected activity"); *Ash v. Sambodromo, LLC,* 676 F. Supp. 2d 1360 (S.D. Fla. 2008) (a server's complaint about having to share tips with sushi chefs was not FLSA protected activity); *Alvarado v. I.G.W.T. Delivery Systems, Inc.,* 410 F. Supp. 2d 1272 (S.D. Fla. 2006) (requests for a salary increase in salary did not constitute protected activity); *Brown v. Triton Sec.,* 2005 WL 2708914, *5 (E.D. Va. Oct. 19, 2005), *aff'd* 172 Fed. Appx. 520 (4th Cir. 2006) (complaints about pay rate and job assignment were not protected activity).

Slanga alleged in Count II of his Complaint: "By objecting to Defendants' unlawful pay practices which were violative of the FLSA, Plaintiff engaged in an activity protected by the FLSA." [Complaint, ¶ 28]. However, Slanga admitted in deposition that he never complained about any purported overtime violations; instead, the only "complaints" he made to Lazy Days management were that he sometimes had to work on Saturday with getting a corresponding weekday off and that he wanted a raise.

No provision in the FLSA required that Slanga be given a weekday off when he worked on a Saturday and no provision in the Act required that he be given a pay raise. As a result, he cannot establish that he held an "objectively reasonable" belief that Lazy Days had engaged in an unlawful practice under the FLSA. Therefore, Slanga's "complaint" did not qualify as protected activity.[2] In short, Slanga never made any complaint that put Lazy Days on "fair notice" that an FLSA grievance had been lodged or that Slanga was engaging in protected activity. *See Barquin v. Monty's Sunset, LLC,* 975 F. Supp. 2d (S.D. Fla. 2013).

## 2.  No Causal Connection

Even assuming that Slanga could establish that he engaged in protected activity, he cannot establish the requisite element of a causal connection between his alleged protected activity and his termination. The uncontroverted record

---

[2] Even if Slanga had complained about not receiving overtime pay, due to the controlling precedent of *Brennan v. Deel Motors, Inc., supra,* he could not establish that he engaged in protected activity. *See, e.g. Baker v. Supreme Beverage Co., Inc.,* 2014 WL 7146790, at *7 (N.D. Ala. Dec. 15, 2014) (because the Eleventh Circuit and other circuits had ruled that the employer was not required to pay overtime under the motor carrier exemption, the plaintiff could not establish that he engaged in protected activity despite his repeated complaints about the failure to pay him overtime).

TPA 512398727v1

evidence[3] is that Jensen was not aware of any complaint by Slanga regarding his pay. Therefore, Slanga cannot establish the requisite causal connection. *See Clover v. Total System Services, Inc., supra* at 1355-56 (plaintiff failed to present sufficient evidence of a causal connection where there was no evidence that the decisionmaker was aware of her protected activity); *Walton-Horton v. Hyundai of Ala.,* 402 F. Appx. 405, 409 (11th Cir. 2010); *Barquin v. Monty's Sunset, LLC, supra* at 1315 ("[t]here can be no causal connection between a protected activity and an adverse employment action unless the employer had knowledge of the protected activity at the time of the adverse action").

Any attempt by Slanga to avail himself of the cat's paw liability theory under *Staub v Proctor Hospital,* 562 U.S. 411, 131 S. Ct. 1186, 179 L. Ed. 2d 144 (2011) should be rejected. *Staub* requires that the non-decisionmakers be the "proximate cause of the ultimate employment action." 562 U.S. at 422. To establish causation under the cat's paw theory, Slanga would need to show that: 1) acting with retaliatory animus, Schwartz recommended the termination of Slanga's employment; and 2) the decisionmaker – Jensen – followed Schwartz's recommendation without

---

[3] *See Clover v. Total System Services, Inc., supra* at 1355 (the "fact that the vice president who heads a corporate division and the vice president in charge of Human Resources talk regularly is not surprising, nor is it enough to support a reasonable inference that they discussed a specific topic, much less an inference concerning what they said about it," for 'could have told' is not the same as 'did tell'"); *Blackston v. Shook & Fletcher Insulation Co.,* 764 F.2d 1480, 1482 (11th Cir. 1985) ("an inference based on speculation and conjecture is not reasonable"); *see also Burrell v. Board of Trustees of A. Military College,* 970 F.2d 785, 791 n. 15 (11th Cir. 1992) ("[o]nly one fact can be inferred from their meeting: that the meeting took place. Any other conclusion about the content of their discussion in contradiction to their testimony would qualify as speculation, not inference"); *Dark v. The Learning Tree, Inc.,* 2015 WL 1865432, at *10 (N. D. Ala. April 23, 2015) ("in the face of general denials by Murphy, Dooley, and Clark, the motion that they discussed Plaintiff's FMLA leave or criticized her attendance at those meetings amounts to speculation, not a reasonable inference").

an independent investigation.  *See Stimpson v. City of Tuscaloosa,* 186 F.3d 1328, 1331-32 (11th Cir. 1999).

Moreover, federal courts have made it clear that a biased supervisor's indirect or limited involvement in an employment decision is not enough to sustain a cat's paw theory.  *See, e.g. Jones v. Se. Pa. Transp. Authority,* 796 F.3d 323 (3d Cir. 2015) (rejecting cat's paw liability because the ultimate decision to fire the plaintiff was the result of an independent investigation, even though a report by an allegedly discriminatory supervisor "got the ball rolling" on the investigation); *Cafasso v. General Dynamics C4 Systems, Inc.,* 637 F.3d 1047, 1060 (9th Cir. 2011) (no evidence that subordinates "set in motion" or influenced an official's decision to terminate the plaintiff).

Here, Slanga has adduced no proof whatsoever that Schwartz harbored any anti-FLSA retaliatory animus against him.  Moreover, there is no evidence that Schwartz initiated or even recommended the termination of Slanga's employment; instead, he merely agreed with the termination decision after it was made by Jensen.

Nor is this a case in which Jensen, as the decisionmaker, was dependent upon Schwartz's opinion and unable to independently assess the basis for terminating Slanga.  The undisputed record demonstrates that Jensen did not make the termination decision based solely on reports from Schwartz.  Instead, Jensen was the direct recipient of customer telephone calls and e-mails in which customers complained about Slanga and, in fact, made the termination decision after receiving such a direct customer telephone call.

*TPA 512398727v1*

### 3.    No Evidence of Pretext

Once an employee meets his burden of establishing a *prima facie* case, the employer must then articulate legitimate nonretaliatory reasons for the adverse employment action.  If the employer meets this burden of production, then the plaintiff must establish that the proffered reason is pretextual.  *Univ. of Tex. Sw. Med. Ctr. v. Nassar,* ____ U.S. ___, 133 S. Ct. 2517, 2528, 186 L. Ed. 2d 503 (2013).

"The inquiry into pretext requires this Court to determine whether, 'in view of all the evidence, ... the plaintiff has cast sufficient doubt on the defendant's proffered nondiscriminatory reasons to permit a reasonable factfinder to conclude that the employer's proffered legitimate reasons were not what actually motivated its conduct.'" *Watson v. Kelley Fleet Services, LLC*, 430 Fed. Appx. 790, 791 (11th Cir. 2011) (*quoting Combs v. Plantation Patterns*, 106 F.3d 1519, 1538 (11th Cir. 1997)). The plaintiff must meet the employer's reason "head on and rebut it."  *Wilson v. B/E Aerospace, Inc.*, 376 F.3d 1079, 1088 (11th Cir. 2004).  "A reason is not pretext for discrimination 'unless it is shown both that the reason was false, and that discrimination was the real reason.'"  *Brooks v. Cnty. Com'n of Jefferson Cnty., Ala.*, 446 F.3d 1160, 1163 (11th Cir. 2006) (*citing St. Mary's Honor Ctr. v. Hicks*, 509 U.S. 502, 515 (1993)).

"Because the plaintiff bears the burden of establishing pretext [for discrimination], he must present 'significant probative' evidence on the issue to avoid summary judgment."  *Mayfield v. Patterson Pump Co.*, 101 F.3d 1371, 1376-77

(11th Cir. 1996) (*quoting Isenbergh v. Knight–Ridder Newspaper Sales, Inc.*, 97 F.3d 436, 443–44 (11th Cir. 1996)).

Here, Lazy Days has met its "exceedingly light" burden by articulating a legitimate non-retaliatory reason for terminating Slanga: the repeated customer complaints about him. *Meeks v. Computer Assoc. Int'l,* 15 F.3d 1013, 1019 (11th Cir. 1994). *See also Morris v. Overnite Transp. Co.,* 2005 WL 2291188, at *8 (S.D. Tex. Sept. 20, 2005) ("[a]n employer's receipt of such complaints from customers and the general public is, by itself, a legitimate reason to terminate an employee").

The Court need only determine if Lazy Days relied upon the customer complaints in good faith, not whether the customer complaints were valid. Thus, even if the complaining customers were "lying through their teeth," it would not establish pretext. *See Elrod v. Sears, Roebuck & Co.,* 939 F.2d 1466, 1470 (11th Cir. 1991); *Hawkins v. Ceco Corp.,* 883 F.2d 977, 980 n. 2 (11th Cir. 1989).

Here, Slanga has no significantly probative evidence sufficient to carry his burden of establish that Lazy Days' reasons for terminating him are a mere pretext for retaliation. Slanga does not - - - and cannot - - - dispute the fact that customers complained about him. Moreover, Slanga readily admits that he cannot identify any other Service Advisor who was the subject of as many customer complaints as he was. *See Feise v. North Broward Hospital District,* 683 Fed. Appx. 746, 750 (11th Cir. 2017) ("[I]n establishing pretext, '[i]f a plaintiff fails to show the existence of a similarly situated employee, summary judgment is appropriate where no other evidence of discrimination is present'"), *quoting Holifield v. Reno,* 115 F.3d 1555,

21

1562 (11th Cir. 1997); *McIntyre v. Delhaize America, Inc.,* 403 Fed. Appx. 448 (11th Cir. 2010) (affirming summary judgment where employee failed to provide evidence that stated reason for termination - - - customer complaints - - - was a pretext for retaliation).

III.

**CONCLUSION**

For the foregoing reasons, final summary judgment should be entered in favor of LDRV Holding Corp., d/b/a Lazy Days and against plaintiff Michael V. Slanga.

Respectfully submitted,

/s/Richard C. McCrea, Jr.
Richard C. McCrea, Jr.
Florida Bar No. 351539
Email: mccrear@gtlaw.com
GREENBERG TRAURIG, P.A.
101 E. Kennedy Boulevard
Suite 1900
Tampa, FL 33602
(813) 318-5700 – Telephone
(813) 318-590 – Facsimile
Attorney for Defendant

**CERTIFICATE OF SERVICE**

**I HEREBY CERTIFY** that on January 12, 2018 I electronically filed the foregoing with the Clerk of the Court by using the CM/ECF system.

Jay P. Lechner, Esquire
Jason M. Melton, Esquire
Whittel & Melton, LLC
One Progress Plaza
200 Central Avenue, #400
St. Petersburg, FL 33701

*TPA 512398727v1*

/s/ Richard C.McCrea, Jr.
Attorney

TPA 512398727v1