# UNITED STATES DISTRICT COURT
# MIDDLE DISTRICT OF FLORIDA
# TAMPA DIVISION

MICHAEL V. SLANGA, on behalf of
himself and others similarly situated,

        Plaintiff,

v.                            CASE NO.: 8:17-cv-01220-MSS-TGW

LDRV HOLDINGS CORP, d/b/a
LAZY DAYS,

        Defendant.

_____/

## PLAINTIFF'S MEMORANDUM IN OPPOSITION TO
## DEFENDANT'S MOTION FOR SUMMARY JUDGMENT

Defendant's motion for summary judgment (Doc. 19) must be denied because:

(1)    The record evidence demonstrates that Plaintiff worked more than 40 hours per workweek, was not paid overtime compensation, and the automobile "salesman, partsman or mechanic" exemption does not apply;

(2)    Liquidated damages must be awarded because Defendant's practice of denying its service advisors overtime compensation contravenes controlling precedent and U.S. Department of Labor ("DOL") regulations directly on point; and

(3)    Almost all of the material facts upon which Defendant relies with respect to Plaintiff's retaliation claim are in dispute, contradicted by its own witnesses' prior deposition testimony or are in Plaintiff's favor.

<u>**DISPUTED MATERIAL FACTS**</u>

Plaintiff denies the allegations set forth in Defendant's Statement of "Undisputed Material Facts" and set forth the following material facts refuting same.

## I. LAZY DAYS IS PRIMARILY ENGAGED IN THE BUSINESS OF SELLING TRAILERS

Defendant is in the business of selling recreational vehicles ("RV"s). There are two basic types of RVs: (1) trailers (including standard hitch "Travel Trailers," "Fifth Wheel" trailers, "Pop-Up" trailers and "Specialty Trailers"); and (2) motor coaches (e.g., motorized RVs). [Slanga Dec., ¶ 8]

During Plaintiff's employment with Defendant, approximately 75% of Defendant's sales consisted of sales of trailers. [Slanga Dec., ¶ 9] Only approximately 25% of Defendant sales consisted of sales of motorized motor coaches. [Slanga Dec., ¶ 10] Other significant portions of Defendant's business (other than RV sales) included renting RVs and leasing camping facilities on site. [Slanga Dec., ¶ 11] Thus, the combination of: (1) sales of "trailers"; (2) renting RVs; (3) leasing camping facilities consisted of more than 80% of the company's business during Plaintiff's employment with Defendant. [Slanga Dec., ¶ 12]

These figures are consistent with industry averages. As reflected in Table 1, *infra*, 87.3% of all wholesale RVs shipped in December 2016 (at the time of Plaintiff's protected activity) were trailers. Only 12.7% of all wholesale RVs shipped in December 2016 were motorized coaches. According to Table 1, these percentages remained relatively consistent from 2015 to 2016.

| | DEC 2015 | DEC 2016 | Change Over Last Year | Cum. 2015 | Cum. 2016 | Change Year To Date |
|---|---|---|---|---|---|---|
| **Table 1** | | | | | | |
| **Towables** | | | | | | |
| Travel Trailers (ALL) | 17,737 | 21,443 | 20.9% | 239,255 | 282,250 | 18.0% |
| Travel Trailers - Fifth Wheel | 5,634 | 6,484 | 15.1% | 75,148 | 80,435 | 7.0% |
| Folding Camping Trailers | 633 | 627 | -0.9% | 9,206 | 10,208 | 10.9% |
| Truck Campers | 260 | 241 | -7.3% | 3,327 | 3,057 | -8.1% |
| **All Towable RVs** | **24,264** | **28,795** | **18.7%** | **326,936** | **375,950** | **15.0%** |
| **Motorhomes** | | | | | | |
| Conventional (Type A) | 1,770 | 1,647 | -6.9% | 21,948 | 22,673 | 3.3% |
| Van Campers (Type B) | 248 | 383 | 54.4% | 3,294 | 4,087 | 24.1% |
| Mini (Type C) | 1,743 | 2,145 | 23.1% | 22,068 | 27,981 | 26.8% |
| **All Motorhomes** | **3,761** | **4,175** | **11.0%** | **47,310** | **54,741** | **15.7%** |
| **Total RV Shipments** | **28,025** | **32,970** | **17.6%** | **374,246** | **430,691** | **15.1%** |

Source: Recreational Vehicle Industry Ass'n, Market Report (Jan. 26, 2017), available at www.rvia.org

## II. PLAINTIFF WAS NOT A SALESMAN, PARTSMAN, OR MECHANIC AND WAS NOT PRIMARILY ENGAGED IN SELLING

Plaintiff was employed by Defendant as a service advisor from July 2016 through March 31, 2017. During his employment with Defendant, Plaintiff was not a salesman. [Slanga Dec., ¶ 3] He never sold any RVs. [Slanga: 29:22-24; Slanga Dec., ¶ 14; Wells: 12:24-25] He never oversaw any selling of RVs. [Slanga: 29:25-30:6] Rather, Plaintiff's job was to meet with customers who wanted service and to communicate with them during the service process to let them know the progress. [Slanga: 33:24-34:5; Schwartz: 10:3-15]

Plaintiff was not a partsman or a mechanic. [Slanga Dec., ¶¶ 4, 5] He did not service or work on RVs. [Slanga Dec., ¶ 13; Wells: 12:21-23] Plaintiff was not primarily engaged in selling or servicing automobiles or trucks or selling trailers. [Slanga Dec., ¶¶ 6, 7]

### III. PLAINTIFF WAS WRITTEN UP, SUBJECTED TO HEIGHTENED SCRUTINY, AND FIRED SOON AFTER ENGAGING IN PROTECTED ACTIVITY

During his employment with Defendant, Plaintiff was regularly required to work in excess of forty (40) hours per workweek but was not paid overtime compensation. [Slanga Dec., ¶ 16; Schwartz: 43:8-16] Rather, he was paid a salary, with small commission of 1.5 percent. [Slanga: 27:7-14; Slanga Dec., ¶ 13; Schwartz: 8:16-9:18]

Plaintiff complained to his supervisor Ted Schwartz more than once about not being paid for his overtime work. [Slanga: 50:15-52:9; Slanga Dec., ¶ 17] Schwartz responded that "that's just the way it is." [Slanga: 51:22-53:23] Notably, Schwartz admits being involved in the later decision to terminate Plaintiff's employment. [Schwartz: 23:17-19]

After Schwartz ignored his complaints, Plaintiff complained to Steve Scolaro, around the time the overtime laws were supposed to be revised in December 2016, regarding whether the service advisors were finally going to be paid for overtime. [Slanga: 53:8-23; Slanga Dec., ¶ 17] Soon thereafter, Plaintiff was written up by Schwartz, began receiving heightened scrutiny, including accusations of customer complaints, and his employment was terminated on March 31, 2017. [Schwartz: 32:13-25]

Based on his own personal knowledge, Plaintiff believes that his overtime complaints were a reason his employment was terminated by Defendant. [Slanga Dec., ¶ 18] Plaintiff was made a scapegoat because of his complaints about his hours of work and not being properly compensated for them. [Slanga: 114:10-16]

Until he complained, Plaintiff's work performance was roughly the same as the other service advisors who did not complain about overtime and were not fired. [Slanga: 58:6-11]

After Plaintiff complained, Schwartz suddenly subjected him to heightened scrutiny and put him on a performance improvement plan. [Schwartz: 32:13-25]

Defendant failed to follow its own progressive discipline policy when firing Plaintiff, and admittedly even skipped at least two steps in the process. [Schwartz: 34:11-35:6] It was Schwartz – the person to whom Plaintiff complained – who suggested to his manager, Steve Jensen, to skip the progressive discipline steps and immediately fire Plaintiff. [Schwartz: 36:6-16] Jensen never spoke with Plaintiff previously about any issues with customer complaints until after he engaged in protected activity. [Slanga: 58:16-59:2] Rather, it was Schwartz who talked to Jensen and provided him all the information that served as a basis for the termination decision. [Schwartz: 23:24-24:18]

During Plaintiff's deposition, Defendant's attorney played a very short clip of a purported recording of a telephonic unemployment compensation hearing. [Slanga: 116:8-117:10; Slanga Dec., ¶ 17] Even if the recording was authentic (which Plaintiff disputes), the clip was taken out of context, was incomplete and did not reflect the full discussion of the topic of Plaintiff's termination. [Slanga: 116:8-117:10; Slanga Dec., ¶ 17] Plaintiff never said that his overtime complaints were not a reason his employment was terminated. [Slanga: 116:8-117:10; Slanga Dec., ¶ 17] Plaintiff was not represented by an attorney at the telephonic hearing, was unfamiliar with the procedure and was confused by the attorney's interrogation. [Slanga: 116:8-117:10; Slanga Dec., ¶ 17] Plaintiff also was not provided an explanation that the issues in this case would be covered during the unrelated unemployment compensation hearing. [Slanga: 116:8-117:10; Slanga Dec., ¶ 17] As a result, Plaintiff did not think it was necessary or relevant to explain why his overtime complaints were a reason

why his employment was terminated. [Slanga: 116:8-117:10; Slanga Dec., ¶ 17]

**ARGUMENT**

## I.   SUMMARY JUDGMENT STANDARD

Summary judgment is properly granted only where, unlike here, there is no genuine dispute regarding a material fact. Fed.R.Civ.P. 56(a). On a motion for summary judgment, the court must review the record, and all its inferences, in the light most favorable to the nonmoving party. *See United States v. Diebold, Inc.*, 369 U.S. 654, 655 (1962). Neither credibility determinations nor weighing the evidence may play any role in summary judgment proceedings. *See Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 150 (2000); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986). The Court may not decide a genuine issue of fact at the summary judgment stage. *See Fernandez v. Bankers Nat'l Life Ins. Co.*, 906 F.2d 559, 564 (11th Cir. 1990). Credibility determinations are best addressed at trial. *See Anderson*, 477 U.S. at 255.

## II.   THE AUTOMOBILE "SALESMAN, PARTSMAN OR MECHANIC" EXEMPTION DOES NOT APPLY

"The employer has the burden of showing entitlement to an exemption." *Barreto v. Davie Marketplace, LLC*, 331 F. App'x 672, 674 (11th Cir. 2009) (citing *Jeffery v. Sarasota White Sox, Inc.*, 64 F.3d 590, 594 (11th Cir. 1995)). District courts must "construe overtime exemptions narrowly, against the employer." *Id.* (citing *Avery v. City of Talladega*, 24 F.3d 1337, 1340 (11th Cir. 1994)). The Eleventh Circuit "has recognized the 'Supreme Court's admonition that courts closely circumscribe the FLSA's exceptions.'" *Id.* (quoting *Nicholson v. World Bus. Network, Inc.*, 105 F.3d 1361, 1364 (11th Cir. 1997)).

### A.   Background

Defendant claims Plaintiff was exempt from the FLSA overtime requirements under Section 13(b)(10)(A) of the FLSA. He was not. In support, Defendant relies exclusively on cases addressing service advisors at <u>automobile</u> dealerships, but these cases are inapposite. Section 13(b)(10) is divided into two subsections. Subsection A applies to <u>automobile</u> dealerships; Subsection B applies to <u>trailer</u> dealerships:

> (A)   any salesman, partsman, or mechanic primarily engaged in selling or servicing automobiles, trucks, or farm implements, if he is employed by a nonmanufacturing establishment primarily engaged in the business of selling such vehicles or implements to ultimate purchasers; or

> (B)   any salesman primarily engaged in selling trailers, boats, or aircraft, if he is employed by a nonmanufacturing establishment primarily engaged in the business of selling trailers, boats, or aircraft to ultimate purchasers.

As reflected in Table 2, *infra*, Congress has progressively narrowed the Section 13(b)(10) exemption over the years to specifically exclude employees primarily engaged in servicing trailers at establishments, such as Lazy Days, that are "primarily engaged in the business of selling trailers."

| Table 2 The Narrowing of Section 13(b)(10) of the FLSA | | |
|---|---|---|
| **1961** | **1966** | **1974** |
| "<u>Any employee</u> of a retail or service establishment which is primarily engaged in the business of selling *automobiles*, trucks, or farm implements." | "Any <u>salesman, partsman, or mechanic</u> primarily engaged in <u>selling or servicing</u> *automobiles*, *trailers*, trucks, farm implements, or aircraft" at a covered dealership. | "Any salesman, partsman, or mechanic primarily engaged in <u>selling or servicing</u> *automobiles*, trucks, or farm implements" at a covered dealership. |
| | | "Any salesman primarily engaged in <u>selling *trailers*</u>, boats, or aircraft" at a covered dealership. |

### B. Lazy Days Is Primarily Engaged In The Business Of Selling Trailers

In a case that is controlling in this circuit, the Fifth Circuit analyzed the statutory text, the 1966 amendment and the legislative history and concluded that motor homes are "trailers" for purposes Section 13(b)(10). *Shultz v. Louisiana Trailer Sales, Inc.*, 428 F.2d 61, 65-66 (5th Cir. 1970).[1] Here, the record evidence in this case overwhelmingly demonstrates that Defendant is primarily engaged in the business of selling trailers. Defendant's business primarily consists of selling RVs. There are two basic types of RVs: (1) trailers (including standard hitch "Travel Trailers," "Fifth Wheel" trailers, "Pop-Up" trailers, and "Specialty Trailers"); and (2) motor coaches (e.g., motorized RVs).

During Plaintiff's employment, approximately 75% of Defendant's RV sales consisted of sales of trailers. Only approximately 25% of its sales consisted of sales of motorized coaches. This is consistent with industry averages. Other significant portions of its business (other than RV sales) include renting RVs and leasing camping facilities on site. Thus, the combination of: (1) sales of "trailers"; (2) renting RVs; (3) leasing camping facilities consisted of more than 80% of the company's business. *See Donovan v. Bereuter's, Inc.*, 704 F.2d 1034, 1037 (8th Cir. 1983) (employer was not "primarily engaged" in business of selling automobiles, trucks or farm implements where combination of gross revenue from the other lines of business (wholesale sale of automobiles, trucks, gasoline and petroleum products and retail sales of hardware, tires, batteries and parts) exceeded, in each year, gross revenue from retail sale of automobiles and trucks).

---

[1] Decisions of the Fifth Circuit decided prior to the close of business on September 30, 1981, are binding precedent in the Eleventh Circuit under *Bonner v. City of Pritchard*, 661 F.2d 1206, 1209 (11th Cir. 1981).

Thus, Defendant is primarily engaged in the business of selling trailers. Nevertheless, Defendant contends that Section 13(b)(10)(A) (rather than B) should apply because "the RVs sold by Lazy Days are deemed automobiles or trucks under Florida law." This is untrue. Florida law does <u>not</u> deem RVs to be automobiles or trucks. To the contrary, it deems them to be "motor vehicles" (for purposes of licensing). Fla. Stat. § 320.01(1). However, "motor vehicle" is not synonymous with "automobile" or "truck." Indeed, trailers also are fall under the definition of "motor vehicles" under Section 320.01(1), along with any "<u>automobile</u>, motorcycle, <u>truck</u>, trailer, semitrailer, truck tractor and semitrailer combination, or any other vehicle operated on the roads of this state, used to transport persons or property, and propelled by power other than muscular power." The fact that the definition of "motor vehicle" includes RVs, automobiles and trucks, does not mean that RVs are automobiles or trucks. Applying this logical fallacy, RVs equally are trailers, because the definition of "motor vehicle" also includes trailers. Following this fallacious reasoning even further, it means that RVs are motorcycles. Statutes should be construed in a manner that avoids absurd results like this. *See U.S. v. 6640 S.W. 48th St.*, 41 F.3d 1448, 1452 (11th Cir. 1995).

"It is 'a cardinal principle of statutory construction' that 'a statute ought, upon the whole, to be so construed that, if it can be prevented, no clause, sentence, or word shall be superfluous, void, or insignificant.'" *TRW Inc. v. Andrews*, 534 U. S. 19, 31 (2001) (quoting *Duncan v. Walker*, 533 U. S. 167, 174 (2001). If one were to accept Defendant's proposed construction that all vehicles defined as "motor vehicles" are automobiles or trucks, then trailers are automobiles or trucks. Yet, when it amended Section 13(b)(10) of the FLSA in 1974, Congress chose to expressly distinguish between automobiles and trucks (in subsection

A) and trailers (in subsection B). Defendant's proposed construction would render this statutory distinction superfluous, void and insignificant and, therefore, must be rejected.

In sum, it is clear that Defendant is primarily engaged in the business of selling trailers, not automobiles, and any Section 13(b)(10) exemption analysis must proceed under subsection B of that Section.

## C. Controlling Precedent

In its motion, Defendant proclaims that the Fifth Circuit decision in *Brennan v. Deel Motors, Inc.*, 475 F.2d 1095 (5th Cir. 1973) is "controlling precedent." This is false. First, *Brennan* is inapposite because the defendant, Deel Motors, undisputedly was an automobile (not trailer) dealership, so a different Section 13(b)(10) analysis would apply.

Second and more importantly, the Fifth Circuit, three years earlier in *Shultz* already addressed Section 13(b)(10) and its application to mobile home dealerships, and held that the exemption does <u>not</u> apply. 428 F.2d at 65-66. Accordingly, there can be no question that *Shultz* (not *Deel Motors*) is controlling. *See Clark v. Housing Auth. of Alma*, 971 F.2d 723, 726, n.4 (11th Cir. 1992) ("Where circuit authority is in conflict, the earliest panel opinion resolving the issue in question binds this circuit until the court resolves the issue en banc"); *U.S. v. Dailey*, 24 F.3d 1323, 1327 (11th Cir. 1994) ("the earliest panel opinion resolving the issue in question binds this circuit until the court resolves the issue en banc"); *Walker v. Mortham*, 158 F.3d 1177 (11th Cir. 1998) (the "earliest case" rule is correct "because of the importance of the prior precedent rule. The prior precedent rule, which binds later panels to the decisions of former panels, is essential to maintaining stability in the law.").

### 1. *"Primarily Engaged"*

In *Shultz*, the court first concluded that "the term 'primarily engaged' as used in the Act contemplates in excess of fifty per cent of the employees' hours of work…." Shultz, 428 F.2d at 62. Here, the evidence reflects that Plaintiff did not sell trailers (or RVs of any type) and, therefore, less than 50% of his hours (actually 0%) of work was spent selling trailers. Hence, he could not be "primarily engaged" in selling trailers. Another factor showing that Plaintiff was not primarily engaged in sales is that he was paid almost exclusively on a salary basis. *See Deel Motors*, 475 F. 2d at 1097 ("Each of these service employees receive a substantial part of their remuneration from commissions and therefore are more concerned with their total work product than with the hours performed.")

## 2. *Exemptions from the FLSA are to be narrowly construed*

The *Shultz* court emphasized that exemptions from the FLSA are to be narrowly construed against the employer, upon which the burden rests to show that it comes within the exemption. In particular, the phrase "salesmen, partsmen, and mechanics" must be narrowly construed. 428 F.2d at 66-67 ("To construe the word 'mechanic' in conjunction with the word 'trailer' as including the various house-repair, truck driver, and construction duties performed by these servicemen, is to frustrate the legislative intention and to extend the exemption beyond that which, in our opinion, was intended by Congress").[2]

Here, it is undisputed that Plaintiff did not sell trailers (or RVs of any type), nor did he oversee the selling of RVs in any way. Thus, he was not a "salesman" under any ordinary or common meaning of the term. *See* COLLINS DICT. (2017) (defining "salesman" as "a man whose job is to sell things…."). When words are not defined, it is fundamental that they

---

[2] Note that the *Shultz* decision preceded the 1974 amendments which eliminated "partsmen" and "mechanics" from subsection B and limited it solely to "salesmen."

"will be interpreted as taking their ordinary, contemporary, common meaning." *Perrin v. United States*, 444 U.S. 37, 42 (1979). Even if one were inclined to find that he was a "salesman" (which he was not), there still is no dispute that Plaintiff was not "primarily engaged" in selling trailers, as required by the statute, so the exemption still would not apply.

**D. <u>Cases Addressing The Automobile "Salesman, Partsman, Or Mechanic" Exemption, Although Inapposite, Support The Conclusion That RV Service Advisors Are Not Exempt</u>**

As highlighted in Table 2, *supra*, salesmen, partsmen or mechanics primarily engaged in "selling or servicing" automobiles at automobile dealerships are exempt under Section Section 13(b)(10)(A). Some courts – but not most – have interpreted the term "servicing" broadly to include service advisors. However, as discussed below, the prevailing view, and the DOL position in its regulations, is that the term "servicing" cannot be interpreted to include service advisors at automobile dealerships. Regardless, Section 13(b)(10)(B) – the applicable provision addressing trailer salesmen – does not include the term "servicing," so that part of the reasoning in those cases generally does not apply here.

The most recent case to address the Section 13(b)(10)(A) exemption is *Navarro v. Encino Motorcars, LLC*, 845 F. 3d 925 (9th Cir. 2017). The pertinent holding in *Navarro* is:

> "we conclude that the phrase 'primarily engaged in selling ... automobiles' encompasses only those who are actually and primarily occupied in selling cars...."

*Id*. at 933. Here, Plaintiff was not occupied in any way in selling RVs. The court continued that "the phrase 'primarily engaged in ... servicing automobiles' encompasses only those who are actually and primarily occupied in the repair and maintenance of cars. Because service advisors meet neither definition, the FLSA does not exempt service advisors." *Id.* Here,

even if Section 13(b)(10)(A) applied (which it does not), Plaintiff was not occupied in the repair or maintenance of RVs.[3]

Recent decisions by district courts within the Eleventh Circuit are consistent with the Ninth Circuit decision in *Navarro*. In *Williams v. Gold Car Lending, Inc.*, 2010 WL 5173195 (M.D. Ga. Dec. 13, 2010), the court rejected defendant's argument that tangential selling by the plaintiff as a consequence of the "buy here, pay here" nature of the defendants' car dealership brought the plaintiff within the automobile salesman exemption under 29 U.S.C. § 213(b)(10)(A). *Id.* at *4. Although the plaintiffs "admittedly engaged in some sales activity," "the Court cannot conclude as a matter of law that Plaintiffs underlined primarily engaged in sales while working for Defendants. The present record demonstrates that Plaintiffs had a variety of job responsibilities." *Id.* (emphasis supplied). *See also Contreras v. Lara's Trucks, Inc.*, 2013 WL 163648, at *2-3 (N.D. Ga. Jan. 14, 2013) (denying summary judgment where plaintiff's job admittedly affected sales, but "[t]here [wa]s a genuine issue of material fact regarding [his] primary duty for Lara's Trucks, and thus the Defendants cannot prove [its] affirmative defense….").

## III.    LIQUIDATED DAMAGES MUST BE AWARDED

An employer who violates the FLSA is automatically liable for liquidated damages under 29 U.S.C. § 216, unless the defendant can prove the elements of an affirmative defense that the violation was both "in good faith and that [it] had reasonable grounds to believe that

---

[3] In its motion, Defendant places much emphasis on the earlier Supreme Court decision in *Encino Motorcars, LLC v. Navarro*, ___ U.S. ___, 136 S. Ct. 2117 (2016). The only pertinent holding from that case was that the DOL regulation stating that service advisors are not exempt was not entitled to *Chevron* deference. The Court did not address whether the regulation was entitled to *Skidmore* or some other level of deference.

[its] act or omission was not a violation of the [FLSA]…." 29 U.S.C. § 260.

Defendant's sole basis for claiming good faith and reasonable grounds for believing its practice was not a violation of the FLSA is the purported "controlling precedent of *Brennan v. Deel [Motors]*…." This is false. Three years prior to *Deel Motors*, the Fifth Circuit in *Shultz* already addressed Section 13(b)(10) and its application to mobile home dealerships, and held that the exemption does <u>not</u> apply. There is no question that *Shultz* (not *Deel Motors*) is controlling. Although a lawyer's failure to disclose to the tribunal controlling legal authority known to the lawyer to be directly adverse to his client's position likely constitutes a violation of his duty of candor under Rule 4-3.3(a)(3), Fla.R.Prof.Resp., courts have reached differing results as to whether it also violates Rule 11, because the failure could simply be attributed to negligent "inadequate or unsound research" rather than an intentional omission designed to mislead the tribunal. *See, e.g., Precision Specialty Metals, Inc. v. U.S.*, 315 F.3d 1346 1356-57 (Fed. Cir. 2003). In this case, however, any hope that the failure to disclose *Shultz* was due to simple negligent research is belied by the fact that the *Deel Motors* decision directly cited the *Shultz* decision. In fact, it was the <u>only</u> case cited by the *Deel Motors* court. Thus, any reliance by Defendant upon *Deel Motors* as a basis for not paying its employees overtime would be misplaced and highly unreasonable.

Furthermore, liquidated damages must be awarded because Defendant's practice of denying its service advisors overtime compensation directly violates the DOL regulations which declare that service advisors – even at automobile dealerships – are not exempt. 29 C.F.R. § 779.372(c); 76 Fed.Reg. 18,832-01 (Apr. 5, 2011). Those regulations state, in pertinent part:

Salesman, partsman, or mechanic.

(1) As used in section 13(b)(10)(A), a salesman is an employee who is employed for the purpose of and is primarily engaged in making sales or obtaining orders or contracts for sale of the automobiles, trucks, or farm implements that the establishment is primarily engaged in selling....

(2) As used in section 13(b)(10)(A), a partsman is any employee employed for the purpose of and primarily engaged in requisitioning, stocking, and dispensing parts.

(3) As used in section 13(b)(10)(A), a mechanic is any employee primarily engaged in doing mechanical work (such as get ready mechanics, automotive, truck, or farm implement mechanics, used car reconditioning mechanics, and wrecker mechanics) in the servicing of an automobile, truck or farm implement for its use and operation as such....

29 C.F.R. § 779.372(c). As the DOL explained in 2011, the regulatory definitions "limit[] the exemption to salesmen who sell vehicles and partsmen and mechanics who service vehicles." 76 Fed. Reg. at 18,838. These regulations were in effect from 2011 through Plaintiff's entire employment with Defendant. There can be few more obvious examples of lack of good faith or reasonableness than an employer operating in direct contravention of a DOL regulation.

## IV. DISPUTED MATERIAL FACTS PRECLUDE SUMMARY JUDGMENT ON PLAINTIFF'S RETALIATION CLAIM

The FLSA prohibits employers from "discharg[ing] or in any other manner discriminat[ing] against any employee because such employee has filed any complaint or instituted or caused to be instituted any proceeding under or related to this chapter, or has testified or is about to testify in any such proceeding, or has served or about to serve on an industry committee." 29 U.S.C. § 215(a)(3).

Defendant's sole reliance upon the *McDonnell Douglas Corp. v. Green* standard is erroneous, as it ignores more recent Eleventh Circuit precedent adopting the "convincing

mosaic" standard of proof. "There is more than one way to show discriminatory intent using indirect or circumstantial evidence. One way is through the burden-shifting framework set out in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973), and *Tex. Dep't of Cmty. Affairs v. Burdine*, 450 U.S. 248 (1981)." *Chavez v. Credit Nation Auto Sales, LLC*, 641 F. App'x 883, 884 (11th Cir. 2016). Another way is by "presenting circumstantial evidence that creates a triable issue concerning the employer's discriminatory intent." *Hamilton v. Southland Christian Sch., Inc.*, 680 F.3d 1316, 1320 (11th Cir. 2012). *See also Silverman v. Bd. of Educ.*, 637 F.3d 729, 733 (7th Cir.2011) (a plaintiff may prove discrimination by showing a "convincing mosaic" of circumstantial evidence that "allows a jury to infer intentional discrimination by the decisionmaker").

In *Smith v. Lockheed-Martin Corp.*, 644 F.3d 1321 (11th Cir. 2011), the court emphasized that: "establishing the elements of the *McDonnell Douglas* framework is not, and never was intended to be, the *sine qua non* for a plaintiff to survive a summary judgment motion in an employment discrimination case." *Id.* at 1328. "'Rather, the plaintiff will always survive summary judgment if [he] presents circumstantial evidence that creates a triable issue concerning the employer's discriminatory intent.'" *Id.* (quoting *Hamilton*, 680 F.3d at 1320). "Whatever form it takes, if the circumstantial evidence is sufficient to raise a reasonable inference that the employer discriminated against the plaintiff, summary judgment is improper." *Chavez*, 641 F. App'x at 885 (internal marks omitted).

Applying this correct standard, it is clear that triable issues of fact exist as to whether retaliatory animus was a motivating factor in Defendant's disciplining and firing Plaintiff. "A triable issue of fact exists if the record, viewed in the light most favorable to the plaintiff,

presents enough circumstantial evidence to raise a reasonable inference of intentional discrimination." *Hamilton*, 680 F.3d at 1320. If the plaintiff presents enough such evidence, "his claim will survive summary judgment." *Id*.

### A.    Plaintiff Engaged In Protected Activity

In *EEOC v. White & Son Enterprises*, 881 F. 2d 1006 (11th Cir. 1989), female employees complained to management that they were making less than their male counterparts, to which the manager responded that they could "take [their salary] or leave it." *Id*. at 1011. The Eleventh Circuit held that these verbal complaints – which did not reference overtime or the FLSA – were sufficient to constitute protected activity, noting that the employees had complained about unequal pay. Specifically, the court concluded that, even though "[t]he charging parties did not perform an act that is explicitly listed in the FLSA's anti-retaliation provision ... the unofficial complaints expressed by the women to their employer about unequal pay constitute an assertion of rights protected under the statute." *Id*.

Likewise, here, Plaintiff complained to his supervisor Ted Schwartz more than once about not being paid for his overtime work. Schwartz responded that "that's just the way it is." After Schwartz ignored his complaints, Plaintiff complained to Steve Scolaro, around the time the overtime laws were supposed to be revised in December 2016, regarding whether the service advisors were finally going to be paid for overtime. Plaintiff's belief that the pay practice violated the FLSA was reasonable, given that the practice actually was and is in direct contravention of the DOL regulations and controlling precedent.

### B.    Plaintiff Suffered Adverse Employment Actions

The U.S. Supreme Court has held that the scope of retaliation "is not limited to

discriminatory actions that affect the terms and conditions of employment." *Burlington N. & Santa Fe Ry. Co. v. White*, 548 U.S. 53, 62, 64 (2006). Rather, a plaintiff need only show that the retaliatory action "well might have dissuaded a reasonable worker from making or supporting a charge of discrimination."

The Eleventh Circuit, applying *White*, has held that actions such as unfavorable performance reviews, closer supervision, creation of a tense working environment and refusal to transfer to another shift after complaints of discrimination meet this standard and "clearly might deter a reasonable employee from pursuing a pending charge of discrimination or making a new one." *Crawford v. Carroll*, 529 F.3d 961, 974 (11th Cir. 2008) (unfavorable performance review); *Perry v. Rogers*, 627 F. App'x 823, 833 (11th Cir. 2015) (closer supervision); *Taylor v. Roche*, 196 F. App'x 799, 803 (11th Cir. 2006) (refusal to transfer to night shift and experiencing a tense work environment with a particular supervisor).

There is no dispute that Plaintiff suffered an adverse employment action when he was fired in March 2017. Plaintiff also suffered adverse employment actions when he began receiving heightened scrutiny near the beginning of 2017 (soon after complaining) and received a false written warning. Under the *White* precedent, each of these incidents (warning, heightened scrutiny, termination), by themselves or taken as a whole, constitute adverse employment actions.

## C.    Causation And Pretext

The causal link element is construed broadly so that "a plaintiff merely has to prove that the protected activity and the negative employment action are not completely unrelated." *Olmsted v. Taco Bell Corp.*, 141 F.3d 1457, 1460 (11th Cir. 1998)). The causation element

may be satisfied through evidence from which a causal connection may be inferred, such as by showing "that the person taking the adverse action was aware of the protected expression." *Gary v. Hale*, 212 Fed. Appx. 952, 957 (11th Cir. 2007) (internal citations omitted). Moreover, "[s]uch awareness [referring to the decision maker] may be established either by direct evidence, or by circumstantial evidence, such as (but not limited to) proximity in time." *Id.* A plaintiff will survive summary judgment in a retaliation case by presenting summary judgment evidence which could demonstrate to a reasonable juror there are "weaknesses, implausibilities, inconsistencies, incoherencies, or contradictions in the employer's proffered legitimate reasons for its action" to conclude the reasons are "unworthy of credence." *Jackson v. Ala. State Tenure Comm'n*, 405 F.3d 1276, 1289 (11th Cir. 2005).

Here, the record evidence shows a close temporal proximity and that Schwartz knew of Plaintiff's protected activity. Soon after he complained, he began being targeted by Schwartz for discipline and was written up by Schwartz. Plaintiff testified that his overtime complaints were a reason his employment was terminated by Defendant, and that he was made a scapegoat because of his complaints about his hours of work and not being properly compensated for them. Until he complained, Plaintiff's work performance was roughly the same as the other service advisors who did not complain about overtime and were not fired. It was Schwartz – the person to whom Plaintiff complained – who suggested to his manager, Jensen, to skip the progressive discipline steps and immediately fire Plaintiff. Jensen never spoke with Plaintiff previously about any issues with customer complaints until after he engaged in protected activity. Rather, it was Schwartz who talked to Jensen and provided him all the information that served as a basis for the termination decision.

As the Eleventh Circuit said in *Chavez*, 641 F. App'x at 884), failure to follow the company's progressive discipline policy is further convincing evidence of discrimination. Here, Defendant failed to follow its progressive discipline policy when firing Plaintiff, and even skipped at least two steps in the process. As in *Chavez*, Defendant's failure to follow its own policies gives rise to a reasonable inference that the stated reason was not the true reason and that Plaintiff actually was fired because he complained about unlawful pay practices.

<u>**CONCLUSION**</u>

For the foregoing reasons, Defendant's motion for summary judgment (Doc. 19) must be denied. The automobile "salesman, partsman or mechanic" exemption does not apply and, under controlling precedent and the DOL regulations directly on point, Plaintiff was not exempt. Liquidated damages must be awarded because Defendant's pay practice plainly contravened this precedent and the DOL regulations. Finally, almost all of the material facts upon which Defendant relies with respect to Plaintiff's retaliation claim are in dispute, contradicted by its own witnesses' prior deposition testimony or are in Plaintiff's favor.

Respectfully submitted,

/s/ Jay P. Lechner
Jay P. Lechner, Esq.
Florida Bar No.: 0504351
Jason M. Melton, Esq.
Florida Bar No.: 605034
**WHITTEL & MELTON, LLC**
One Progress Plaza
200 Central Avenue, #400
St. Petersburg, Florida 33701
Telephone: (727) 822-1111
Facsimile: (727) 898-2001
lechnerj@theFLlawfirm.com
sonia@theFLlawfirm.com
*Attorneys for Plaintiff*

**CERTIFICATE OF SERVICE**

I hereby certify that on this 25th day of January, 2018, I electronically filed the foregoing with the Clerk of the Court by using the CM/ECF system. I further certify that I mailed the foregoing document and the notice of electronic filing by first-class mail to the following non-CM/ECF participants:  n/a_____.

/s/ Jay P. Lechner_____
Jay P. Lechner, Esq.